IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARY M. CUMMINS )
)
      Plaintiff, )
)
v. ) No. 06 C 5082
)
NORTHEAST ILLINOIS REGIONAL )
COMMUTER RAILROAD CORP., )
d/b/a METRA )
)
      Defendant. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Northeast Illinois Regional Commuter Railroad Corp.'s ("Metra") motion for summary judgment. For the reasons stated below, we grant Metra's motion for summary judgment.

## BACKGROUND

Plaintiff Mary M. Cummins ("Cummins") is a Caucasian female who was employed by Metra as a student in Metra's engineer training program beginning on February 15, 2005. Cummins alleges that on October 13, 2005, she and the crew on the locomotive, which consisted of F.D. Wright, a black male conductor, D. Cooper,

1

a black male engineer, and D.G. Brown, a black female brakeman, were traveling on Metra's train from Millennium Park Station to University Station. Cummins claims that upon arrival at University Station, the brakeman received information regarding speed restrictions for the train and relayed the information to Cummins in anticipation of her return trip. Cummins contends that during the operation of the train back to Millennium Park Station she thought that the speed restriction information was incorrect. In response to her alleged belief that the information was incorrect, Cummins claims that she called the track flagman who was on duty and that the flagman confirmed that the information was incorrect. According to Cummins, as a result of the flagman's confirmation of her belief, Cummins modified the operation of the locomotive. Cummins further contends that when she arrived at Millennium Park Station, the locomotive crew reported to the foreman about the incident and the crew were subsequently notified by the foreman that the Federal Railway Administration ("FRA") and National Transportation Safety Board would be investigating the incident. On October 20, 2005, Cummins claims that the crew, including Cummins, were officially charged with possible violations of Metra's General Code of Operating Rules and that an investigation ensued. Cummins claims that throughout the investigation period, Metra approached Cummins numerous times to tell her that if Cummins signed a document which stated that she committed the rules violations, the charges against the engineer and brakeman would be dropped and that she would receive a reduced suspension. Cummins alleges that she refused to sign the document and requested a formal investigation into the incident.

According to Cummins, Metra terminated her employment and disqualified her from the engineer training program on December 27, 2005. Cummins claims that at the time of her dismissal she was notified that the investigation into the incident on October 13, 2005 had been cancelled and that all charges against the other crew members had been dismissed. Cummins contends that on January 18, 2005, she filed charges of gender discrimination and reverse race discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue notice on June 22, 2006. Cummins then filed the instant action, in which she includes a claim of reverse race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991 ("Title VII") ("Count I"), and a Title VII gender discrimination claim ("Count II"). Metra moves for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied

by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id*. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Exhaustion of Administrative Remedies

Metra argues that Cummins failed to exhaust the administrative proceedings, and, as a result, Metra was deprived of its statutory right to mediate and conciliate.

Exhaustion of administrative remedies is a prerequisite to a federal court jurisdiction over employment discrimination actions arising under Title VII. *Burton v. Great Western Steel Co.*, 833 F. Supp. 1266, 1270 (N.D. Ill. 1993). When an employee brings a Title VII claim against an employer, an EEOC charge is insufficient to confer jurisdiction in a private civil action when the charged party has not been given an opportunity to participate in conciliation proceedings aimed at voluntary compliance. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981). This sufficient opportunity to conciliate is required because "conciliation between the parties may solve discriminatory problems without the animosities created by coercion, and it provides the respondent with the chance to voluntarily explain and justify past conduct prior to the expense, publicity, and time consumption associated with litigation." *Id*. at 906-07.

Metra contends that Cummins is barred from bringing the instant action because Cummins did not file a discrimination claim with Metra's Equal Opportunity Employment Department, which was required under Metra's internal policies for employees asserting a discrimination charge. We disagree. As Cummins admits, she did not experience gender or reverse race discrimination while she was employed at Metra. The claims of gender discrimination and reverse race discrimination brought by Cummins stem from Metra's termination of Cummins, and not from actions that occurred during Cummins' employment at Metra. Any meeting between the parties would not have resolved the policy implications of the need for a sufficient opportunity to conciliate between the parties because the justification and

explanation for Cummins' termination was already described to her upon her disqualification from the engineer training program.  Finally, at the time that Metra was notified of the EEOC Charge, nothing prevented Metra from contacting Cummins and attempting to resolve the alleged discrimination against Cummins in an amicable manner.  *Eggleston*, 657 F.2d at 907.  Thus, as a matter of law, Cummins' claims are not barred.

II.  Reverse Race Discrimination & Gender Discrimination Claims (Counts I & II)

Metra moves for summary judgment on the Title VII reverse race discrimination and gender discrimination claims (Count I & II).  A plaintiff bringing a Title VII discrimination claim seeking to defeat a defendant's motion for summary judgment can proceed under the direct method of proof or the indirect method of proof.  *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007).  Under the direct method of proof, a plaintiff must present sufficient direct evidence or sufficient circumstantial evidence to establish a "'convincing mosaic' . . . that could permit a reasonable jury to conclude that the employer acted with discriminatory intent. . . ."  *Brewer*, 479 F.3d at 915.

Under the indirect method of proof, a plaintiff asserting a race or gender discrimination claim must first establish a *prima facie* case by showing that she: "(1) is a member of a protected class, (2) perform[ed] her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated less favorably than at least one similarly-situated . . . colleague."  *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir.

2005). In cases of reverse race discrimination, where the discrimination claimed is against the racial majority, "'the plaintiff in such cases must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand.'" *Mlynczak v. Bodman*, 442 F.3d 1050, 1057 (7th Cir. 2006)(quoting *Gore v. Indiana University*, 416 F.3d 590, 592 (7th Cir. 2005)). If the plaintiff establishes a *prima facie* case, the defendant is required to present a legitimate non-discriminatory reason for the employment action. *Farrell*, 421 F.3d at 613. If such a reason is provided, the burden shifts back to the plaintiff to show that the given reason is a pretext. *Id*.

### A. Direct Method of Proof

Cummins does not argue that she can prevail under the direct method of proof and instead contends only that she can prevail under the indirect method of proof. (Ans. 8). Even though Cummins has not addressed the direct method of proof, we have considered all of the evidence in the record in its totality and it is clear that Cummins cannot present sufficient direct evidence or sufficient circumstantial evidence to establish a "'convincing mosaic' . . . that could permit a reasonable jury to conclude that [Metra] acted with discriminatory intent. . . ." *Brewer*, 479 F.3d at

915. The evidence clearly shows that Cummins was terminated based upon her performance reviews, the number of reprimands she received, and her various violations of Metra policies. In addition, Cummins admits that she did not conclude that she was discriminated against based on her gender or race prior to her termination. (SF Par. 95). There is an absence of evidence that shows any animus held against Cummins due to her gender or race. Thus, Cummins cannot prevail under the direct method of proof.

B. *Prima Facie* Case Under the Indirect Method of Proof

1. Protected Class & Adverse Employment Action

In the instant action, Cummins clearly meets prong one and prong three of the above test relating to establishment of a *prima facie* case for race or gender discrimination claim. Cummins is a female and was disqualified from the engineer training program. In regard to the race claim, Cummins states that she is bringing a reverse race discrimination claim, which does not require her to show that she is a member of a protected class. *Mlynczak*, 442 F.3d at 1057. Therefore, Cummins has met prongs one and three under the indirect method.

2. Job Performance

Metra argues that Cummins did not meet Metra's legitimate expectations. Cummins contends that the record shows that her job performance was above average and that any negative ratings on her engineer evaluations were from

8

supervisors who were unqualified or had a vendetta against Cummins. However, "'[a]n employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability.'" *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006)(quoting *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 985 (7th Cir. 1999)). For example, Cummins admits that she failed to have on her person a license that was required by the FRA, which resulted in a reprimand to Cummins and sanctions against Metra by the FRA. (R SF Par. 36). In addition, although Cummins did receive some positive reviews, Cummins admits that on her engineer reviews she received: five ratings of "below average" for the week ending May 27, 2005, (R SF Par. 47); fourteen ratings of "below average" for the week ending June 10, 2005, (R SF Par. 48); four ratings of "below average" for the week ending July 14, 2005, (R SF Par. 49); three ratings of "below average" for the week ending July 22, 2005, (R SF Par. 50); eight ratings of "below average" for the week ending July 29, 2005, (R SF Par. 51); six ratings of "below average" for the week ending August 20, 2005, (R SF Par. 54); five ratings of "below average" and ten ratings of "unsatisfactory" for the week ending September 2, 2005, (R SF Par. 55); and nine ratings of "unsatisfactory" for the week ending August 20, 2005, (R SF Par. 47). In addition, pursuant to Local Rule 56.1, Cummins admits that she was involved in an incident on October 13, 2005, in which Cummins cancelled an incorrect track warrant, which instructs the crew on variants along a track that the engineer should be aware of, that resulted in a violation of Metra rules. Moreover, pursuant to Local Rule 56.1, Cummins admits that upon her supervisor's review of

Cummins' evaluations, Cummins was not ready to take the Performance Skills Test and that the supervisor extended Cummins' training period by an additional four months. Also, Cummins admits that on five occasions she was rated as "below average" or "unsatisfactory" on her engineer evaluation with regard to her repeated failures to report to work on time. (R SF Par. 46, 49, 50, 54, 58). Further, Cummins admits that she failed to attend work on two separate occasions and that on one of those occasions she failed to timely notify the district office, which was the proper procedure when an employee would not be present for work. (R SF Par. 38-40). Thus, although Cummins did receive positive reviews, the undisputed evidence shows numerous occasions where Cummins did not perform her job in a satisfactory manner.

Cummins also contends that each unfavorable incident on Cummins' employment record was excusable due to the circumstances surrounding the incident. However, although Cummins has presented numerous reasons and excuses as to why she violated Metra policies, Cummins does not dispute that such acts occurred or that such negative acts by Cummins were important in the overall evaluation of her duties. In addition, Cummins selectively criticizes the qualifications of those supervisors who rated her poorly, but fails to do so for those trainers that rated her in a favorable manner. Finally, Cummins admits that "most of the evaluations [Metra] presents are from the latter half of her training." (Ans. 9). Cummins cannot simply select those trainers and time periods that are most favorable to her case and ignore those facts that present her in a negative light. Therefore, the undisputed evidence

shows that no reasonable jury could find other than that Cummins was not performing her job duties satisfactorily.

### 3. Similarly Situated Employees

Metra also argues that Cummins has not pointed to similarly situated male and non-white employees who were treated more favorably than Cummins. A similarly-situated employee is one who is "directly comparable to [the plaintiff] in all material respects." *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531-32 (7th Cir. 2003)(stating that "to evaluate whether two employees are directly comparable, we consider all of the relevant factors, which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered the latter factors in making the personnel decision"); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002)(stating that employees are generally similarly-situated if "'the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them'")(quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)). While the factors often depend on the context of the case, *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002), a court will often determine if the plaintiff "is similarly situated with respect to performance, qualifications, and

conduct." *Snipes v. Ill. Dep't of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002). As the Seventh Circuit has stated, "[a]bove all, we are mindful that courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Ajayi*, 336 F.3d at 532.

Cummins claims that she was treated less favorably than similarly-situated employees outside of the class by pointing to other student engineers "whose transgressions were far more egregious that [sic] what [Metra] claims [Cummins] committed or omitted." (Ans. 10). Cummins argues that John Henry ("Henry"), a black male, failed to report to training and was not reprimanded, that Theron Bradley ("Bradley"), a black male, "pulled into the Blue Island District while another train was present[, which was not allowed,] when he was a student engineer" and Bradley was allowed to return to the program, that Carolyn Louis ("Louis"), a black female, entered an incorrect form "and was then called to go through a restricted area" and was not disciplined, and that Gary White ("White") "went through a crossover in excess of 10 mph and was not disciplined or reprimanded." (Ans. 7). However, Cummins admits that although Bradley was able to return to the program, Bradley was also "pulled out of service," (Ans. 7), and that White was "later disqualified" for reasons other than his speed infraction, which included being dismissed based upon his record, Performance Skills Test, and instructor performance review of his ability to perform the necessary duties required of him as an engineer. (R SF Par. 81). In addition, Cummins has failed to present anything other than hearsay evidence and conclusory allegations that indicate that Metra was aware of such rules violations by

her co-workers and that such violations by her co-workers were ever considered by Metra. *See also Celotex Corp.*, 477 U.S. at 325 (stating that the burden of the moving party may be discharged by showing the court the non-movant's lack of support for its case). Further, the undisputed evidence shows that in 2005, three male students were involuntarily disqualified from the engineer program as compared to only one woman, Cummins, and, in total, ten white students and eleven black students passed the training program. Also, the undisputed evidence shows that Cummins and her entire crew, independent of race or gender, were initially reprimanded for their violation of procedures regarding the improper cancellation of a track warrant on October 13, 2005. (R SF Par. 56-63, 64, 66, 68). Finally, although Cummins points to situations where male and non-white engineer training programs students committed single rules violations without being disqualified from the engineer training program, Cummins has not pointed to any evidence in the record that shows that students with similar rules violations and similar negative instructor performance reviews were not disqualified from the program. *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 626 (7th Cir. 2001)(stating that in the 7th Circuit, a plaintiff "must provide more than his unsupported declaration that the [defendant] was mistaken in order to defeat the [defendant's] motion for summary judgment"); s*ee also Celotex Corp.*, 477 U.S. at 325 (stating that the burden of the moving party may be discharged by showing the court the non-movant's lack of support for its case); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006)(noting that employees are similarly-situated if they are directly comparable in all material

respects); *Ajayi*, 336 F.3d at 531-32 (stating standard). Cummins' failure to meet this burden forecloses her ability to prevail on her gender discrimination and reverse race discrimination claims. *Peele*, 288 F.3d at 330-31. (stating that if "a plaintiff has failed to identify a similarly-situated co-worker outside of his protected class, or [show] that the co-worker identified by the plaintiff, while similarly-situated, was not treated in a more favorable manner," the plaintiff's "failure to offer such 'comparables' dooms his . . . claims"). Therefore, no reasonable jury could find that Cummins has pointed to similarly-situated employees outside the class of white females who were treated more favorably than Cummins.

### 4. Something "Fishy"

Cummins argues that Metra's reasons for firing her are suspect due to "the unconventional way [Metra] . . . trained, tested, and disqualified [Cummins]," (Ans. 12), even after Cummins allegedly performed her job in a satisfactory manner. Although Cummins did receive positive reviews in some instances, as is explained above, the undisputed evidence shows that Cummins failed to consistently perform the responsibilities of her job in an acceptable manner. Further, Cummins admits that on numerous occasions she received a "below average" or "unsatisfactory" rating in several categories on her engineer training evaluations and that there were two separate instances that Cummins did not appear for work. (R SF Par. 38, 40). In addition, as noted above, Cummins admits that she was involved in the October 13, 2005, incident relating to the improper voiding of a line on a track warrant and that

Cummins and her crew were charged with rules violations and subjected to discipline. (R SF Par. 56-63, 64, 66, 68). Further, Cummins has failed to present any evidence to show that Metra was inclined "to discriminate invidiously against whites." *Mlynczak*, 442 F.3d at 1057. Finally, as noted above, the undisputed evidence shows that in 2005, a total of ten white students and eleven black students passed the training program, and three males were involuntarily terminated as compared to only one woman, Cummins. Therefore, no reasonable jury could find other than that Cummins has failed to meet her burden to show that Metra was inclined "to discriminate invidiously against whites" or that there was "something 'fishy' about the facts at hand." *Mlynczak*, 442 F.3d at 1057 (internal citations omitted).

     5. Legitimate Reason and Pretext Analysis

Even if Cummins could prove a *prima facie* case of gender discrimination or reverse race discrimination, Metra argues that Cummins was disqualified from the engineer training program due to Metra's need to maintain discipline and uphold safety standards and that Cummins' job performance would negatively impact these standards, which is a legitimate non-discriminatory reason for the adverse employment action. Once Metra has established a legitimate and nondiscriminatory reason for disqualifying Cummins from the engineer training program, the burden then shifts back to Cummins to "demonstrate that the proffered explanation is merely a pretext" for Metra to displace Cummins due to her gender and race. *Ajayi*, 336

15

F.3d at 533-534. Cummins' obligation to show pretext requires her to show that Metra offered a "phony reason for some action." *Green v. National Steel Corp.*, 197 F.3d 894, 899 (7th Cir. 1999); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). In order to show that a defendant's reason is a pretext, "'a plaintiff must show more than that the employer's decision was incorrect; the plaintiff must also show the employer lied about its proffered explanation.'" *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001)(quoting in part *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998)). Under this standard, "[o]ur only task is to determine whether [defendant] 'honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless.'" *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 693 (7th Cir. 2006), 470 F.3d at 693 (determining relevancy for information relating to a pretextual discriminatory reasons); *see also O'Connor v. DePaul Univ.*, 123 F.3d 665, 670 (7th Cir. 1997)(stating that "[f]or purposes of the ADEA, [the court] may not be concerned with whether the decision was right or wrong, fair or unfair, well-considered or precipitous" and that the court "must look only at whether the reason was discriminatory or, in the pretext analysis, whether it actually did underlie the plaintiff's termination").

Cummins has not demonstrated that Metra's reason is phony or completely lacking in a factual basis. Cummins contends that the record shows that her job performance was above average, that any negative ratings on her engineer evaluations were from supervisors who were unqualified or had a grudge against

16

Cummins, and that her negative reviews were from the latter part of Cummins' training. However, Cummins points to no evidence to show that the reprimands and negative ratings were unfounded. Cummins merely disagrees with certain procedures against her or the qualifications of her reviewers. In fact, Cummins admits that she received negative ratings. In addition, Cummins does not dispute that the acts that led to her reprimand occurred or that such improper acts were important in the overall evaluation of her duties. Cummins' disagreement with her ratings, negative beliefs about her reviewers, or her excuses as to why incidents that resulted in her reprimand occurred are insufficient to establish that her disqualification from the engineer training program were improper. *See Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006)(finding that the plaintiff did not sustain her burden of establishing a pretext simply due to the fact that her employer's investigation of her complaints was no thorough and that the standard "is not whether the employer's stated nondiscriminatory ground for the action of which [the] plaintiff is complaining is correct but whether it is the true ground of the employer's action"); *see also Celotex Corp.*, 477 U.S. at 325 (stating that the burden of the moving party may be discharged by showing the court the non-movant's lack of support for its case). Finally, there is an absence of evidence in the record that would allow one to reasonably infer that any Metra employee held an animus against Cummins because of her gender or race and discriminated against her because of her gender or race. *See Gore*, 416 F.3d at 593 (noting that "[t]he objective of the indirect method is to assess whether the plaintiff's race, or gender, or other protected characteristic,

17

affected the employment action in question"). There is not sufficient evidence to show that Metra's given reason was a lie given as a pretext in order to discriminate against Cummins because of her gender or race. Based on the analysis above, Cummins has failed to offer proof, direct, indirect, or circumstantial, that could lead any trier of fact to conclude that she was the victim of gender or reverse race discrimination. Therefore, we grant Metra's motion for summary judgment.

## CONCLUSION

Based on the foregoing analysis, we grant Metra's motion for summary judgment.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 14, 2007